UNITED STATES, Appellee

v.

THOMAS F. MOYNIHAN, Corporal, U. S. Army, Appellant

1 USCMA 333, 3 CMR 67

No. 278

Decided April 21, 1952

LT. COL. George M. Thorpe, U. S. Army, and 1ST LT. Benjamin Feld, U. S. Army, for Appellant.

LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Eugene L. Grimm, U. S. Army, for Appellee.

GEORGE W. LATIMER, Judge:

Petitioner was tried by general court-martial for desertion proscribed by Article of War 58, 10 USC § 1530. He entered a plea of not guilty to the charge and the two offenses alleged thereunder. He was found guilty of the charge and the first specification and not guilty of the second specification as worded, but guilty of the latter specification as amended by the court. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances and to be confined at hard labor for 20 years. After approval by the convening authority the board of review approved only so much of the sentence as provided for dishonorable discharge, total forfeitures and confinement for 15 years. This Court granted review, limited to the single issue of whether the instructions of the law officer as to the elements of the offense were erroneous and prejudicial to the substantial rights of the accused.

The facts which brought about this prosecution are as follows: On the 1st day of December, 1950, in the vicinity of Unsan-ni, Korea, the accused was a member of a company which was ordered to attack and secure a ridge. The unit moved forward on a forced march and after a continuous attack against opposing Chinese Forces secured the area assigned. On the next day, the 2nd of December, the company was forced to retire southward 12 miles. There, on that date, each platoon checked its personnel and accused was reported absent. On the 3rd of December a company muster was held and the accused was found to be among those missing. However, after 6 or 7 days all absentees, with the exception of the accused, were accounted for. In addition to the muster, a check of medical channels was made, but the accused remained unaccounted for. While he was with his unit as it marched toward its objective on December 1, 1950, he was not again present until the 20th day of January, 1951, at which time he was returned through battalion to his company, which was then in reserve.

The company remained in a relatively quiet position in the rear area for some 30 days and during this period accused was present. On the 22nd of February, 1951, the company, pursuant to orders, moved into a forward area and was preparing to carry out another attack which was to take place the following morning. The accused was seen in the company area on the 22nd of February, but could not be found when a search was made for him two days later. He was not returned to the military control until May 7, 1951.

The two specifications of which the petitioner was found guilty read:

"In that Corporal, Thomas F. Moynihan . . . did, in the vicinity of Unsan-ni, North Korea, on or about 1 December 1950, desert the service of the United States by absenting himself without proper leave from his organization with intent to avoid hazardous duty, to wit: service with a Combat Unit, and did remain absent in desertion until he surrendered himself in the vicinity of Koesam, South Korea on or about 20 January 1951.

"In that, Corporal Thomas F. Moynihan . . . did, in the vicinity of Chipyong, South Korea on or about 23 February 1951, desert the service of the United States by absenting himself without proper leave from his organization with intent to avoid hazardous duty, to wit: service with a combat unit, and did remain absent in desertion until he was apprehended at Taegu, South Korea on or about 7 May 1951."

The law officer, in instructing the members of the court-martial as to the elements of the offense, said:

"I would like to advise the court at this time as to the different elements of the offenses charged against the accused. I invite your attention to paragraph 146a, page 198 of the Manual for Courts-Martial 1949 as to each offense charged against the accused. (a) That the accused, at the time and place alleged absented himself without leave from his unit. That as

alleged, he intended at the same time of absenting himself to remain permanently away or to avoid hazardous duty."

The facts of this case bring it under the principles announced in the case of United States v. Jenkins, (No. 238), 1 USCMA 329, 3 CMR 63, decided this date. There, as in the instant situation, the intent charged was "to avoid hazardous duty" while the instructions given concerned not only the intent charged, but in addition an intent "to remain away permanently." There, we reaffirmed an earlier announced rule, and stated:

". . . where intent has been alleged in a desertion case, that element of the crime is limited to the particular intent charged, and the instructions must be narrowed to meet the allegation. . . . failure to comply therewith is error."

We therefore, again hold the giving of the instruction was error but search the record in this case to █ determine whether in the light of the evidentiary background the error had a measurable impact on the minds of the members of the court or whether it was trivial and harmless. The court heard two witnesses: The first, the company commander of the accused; and the second, his platoon sergeant. The remaining evidence consisted of an extract copy of a morning report. The questioning of both witnesses was directed largely to the combat situation of the unit just prior to and during the period of the alleged absences of the accused. It was established that in one instance the company was actively engaged with the enemy when he departed. In the other instance, it was shown that after having moved into an advance area, the company was preparing to engage the enemy when the accused went absent. The entire factual background is one of combat or approaching combat, and the offenses proven are typical battlefield desertions.

The only facts which might conceivably weigh in favor of an intent "to remain away permanently" are the periods of the absences. However, these must be viewed in the light of the fact that the accused returned voluntarily the first time after the unit had ceased fighting and remained with it until it was again committed to action. Then and only when fighting was imminent did he leave again. Singularly enough he returned from the second absence long after the unit had finished its assigned mission. Twice the accused ran away from the fighting, and twice he succeeded in getting back to his company, once by surrender and the other by means not disclosed.

It is not reasonable to conclude that, when you have a mountain of evidence on one side from which an inference of one intent is compelled, and a molehill on the other from which a different intent might be inferred, the members of a court-martial would miss the mountain to see the molehill. In order to find that the error in this case was prejudicial, we would have to so conclude.

Here, as in the Jenkins case, supra, the evidence to support inferences on both types of intent is not in equipoise. Rather, it is weighted overwhelmingly in favor of a finding of intent to avoid hazardous duty. Stated differently, the path of evidence runs sure and straight to that intent and no other. There is no reasonable probability that the court-martial would be misled into deserting that path to travel one which is indistinct, indefinite and barely visible.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.