UNITED STATES, Appellee

v.

JOHN A. WOODSON, Private First Class, U. S. Army, Appellant

3 USCMA 372, 12 CMR 128

No. 1740

Decided September 18, 1953

 ██

Lt Col Herman P. Goebel, Jr., U. S. Army, 1st Lt Bernard Landman, Jr., U. S. Army, and 1st Lt Michael E. McGarvey, U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, and 1st Lt Kenneth A. Howard, U. S. Army, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

Petitioner was tried by a general court-martial, and found guilty of assault with intent to commit murder in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. He was sentenced to a dishonorable discharge, total forfeitures, and confinement for fifteen years. The convening authority approved the findings and sentence and the board of review affirmed.

The accused, who some witnesses claimed was intoxicated, and a Private Hoffman, were engaged in an argument, the nature and causes of which were not shown. The accused made some remarks to the effect that he was going to kill Hoffman and he followed this up by procuring a gun, and inserting a clip of ammunition. One of the other soldiers present at the time attempted to take the gun away from the accused, but he met with little success. The other soldiers, sensing trouble, left the tent, whereupon the accused, who was standing some six feet away, fired a shot at Hoffman, missing him by about six inches. He then attempted to fire a second shot, but the gun jammed and the altercation ended. Apparently accused's behavior was influenced in part by his drinking because prior to the occurrence, he had always been peaceful and had never exhibited any signs of violence.

We granted the petition for review to consider the probability of prejudicial error flowing from the instructions. In setting forth the essential elements of the offense the law officer stated:

"I. A. That the accused assaulted a certain person, to wit: PFC Jack Hoffman by shooting at him with a dangerous weapon, to wit: a rifle, as alleged; and

"B. The facts and circumstances

**373**

of the case showing the existence at the time of the assault of the intent of the accused to murder.

. . . . . .

"There are three different types of murder which will be considered in this case. They are as follows:

"a. Premeditated murder which is the unlawful killing of a human being committed after the formation of a specific intent to kill someone and consideration of the act intended.

"b. An unlawful killing of a human being without premeditation is murder when the person had either an intent to kill or an intent to inflict great bodily harm.

"c. The unlawful killing of a human being while engaged in an act inherently dangerous to others without any intent to cause the death of, or great bodily harm to, any particular person, or even with a wish that death may not be caused is murder if the performance of the act shows a wanton disregard of human life."

Apparently the law officer was seeking to carry out our previously announced principle that the substantive offense of murder should be defined. However, he included too many definitions and ran afoul of one of the reasons advanced by us for reversing the finding and sentence in United States v. Floyd, 2 USCMA 183, 7 CMR 59, decided February 12, 1953. There we had injuries intentionally inflicted. Here we have none but we pointed out there that murder, when used as a base for an assault charge, must be limited to an intent to kill, otherwise, under certain factual situations, the crimes of assault with intent to commit murder may be synonymous with and equivalent to assault with grievous bodily harm intentionally inflicted, assault with a deadly weapon under Article 128 of the Code, 50 USC § 722, and other aggravated assaults under Article 134, *supra*. The latter offenses are not involved in the instant case as the law officer concluded correctly that they were not fairly raised by the evidence and his definitions did not include the felony murders. For that reason, the error in

**374**

this case is limited to possible confusion existing between the three definitions of murder as given to define the specific intent in an assault with intent to murder charged under Article 134 and the offenses of aggravated assault proscribed by Article 128.

Article 118 of the Code, 50 USC § 712, which defines murder, was the premise for the law officer's instructions. It provides:

"Any person subject to this code who, without justification or excuse, unlawfully kills a human being, when he—

(1) has a premeditated design to kill; or

(2) intends to kill or inflict great bodily harm; or

(3) is engaged in an act which is inherently dangerous to others and evinces a wanton disregard of human life; or . . . ."

Article 128 of the Code, *supra*, defines two of the aggravated assaults in the following manner:

"(b) Any person subject to this code who—

(1) commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm; or

(2) commits an assault and intentionally inflicts grievous bodily harm with or without a weapon;

is guilty of aggravated assault and shall be punished as a court-martial may direct."

The Table of Maximum Punishments provides for the following penalties: Assault with intent to commit murder, twenty years (Article 134); assault with grievous bodily harm intentionally inflicted, five years (Article 128 (b) (2)); and, assault with a deadly weapon, three years (Article 128(b) (1)). It stands to reason that if a reasonable interpretation of the instructions given by the law officer would permit an accused to be convicted on proof of the elements of either of the last two offenses and sentenced on the former, that they would be erroneous. A look at the

instructions given establishes that the law officer did not base them precisely on either subsection of Article 128, as the first does not require a specific intent and the second demands that the injuries be intentionally inflicted. The intent used in the instruction was an intent to inflict great bodily harm and while an assault based on that intent is no longer defined as an offense, if it were, we believe it would be less serious than the one proscribed by Article 128 (*b*)(2) and more serious than the one defined in Article 128(*b*)(1). We further believe Congress concluded that Articles 128 and 134 of the Code carved out all the necessary gradations of assault and that further refinement was not desirable as the previous offense of assault with intent to inflict great bodily harm was eliminated from the 1951 Code. In order to believe otherwise we would be required to find that Congress intended to permit a court-martial to return a finding of guilty of, and assess a penalty for, assault with intent to commit murder on facts which would prove less than one of two lesser included offenses. Obviously, Congress could not have intended that result.

Stated somewhat differently, an assault with intent to commit murder must, in view of the punishment imposed, be something greater than either of the offenses proscribed by Article 128 of the Code. This is not only borne out by the punishment but also by the Manual for Courts-Martial, United States, 1951, Appendix 12, which shows that the aggravated assaults under that Article are lesser included offenses. If therefore an assault with intent to inflict great bodily harm can be the predicate to sustain a finding of assault with intent to commit murder, it can also, if injuries are inflicted, be the foundation for an assault with grievous bodily harm intentionally inflicted. Under that view one arm of the murder statute is equal to and yet included as a lesser offense to the other arm.

To stress the principle, let us first assume that the accused had, without intending to kill, intentionally shot and hit the victim. He could then have been convicted of an assault with injuries intentionally inflicted; and, based on the law officer's instruction, an assault with intent to kill. The proof of both could be precisely the same, and yet two different penalties could be imposed. If we next assume that injuries were not inflicted, and that the accused had an intent only to do great bodily harm, he could then have been convicted of an assault with a deadly weapon and an assault with intent to kill based on precisely the same state of facts. This unusual result follows because assault with intent to inflict great bodily harm is not a proscribed offense under the Code so we must look to the next lower offense in degree which is prohibited and this would be assault with a deadly weapon. This is the factual situation in this case and our appraisal of the instructions suggests that one set of facts would establish two offenses, one carrying a penalty of twenty years' confinement and the other carrying a penalty of three years' confinement. We are satisfied that Congress did not intend such an unjust result and that asault with intent to murder must be limited to intent to kill, or, under certain circumstances, to acts inherently dangerous which show a wanton disregard for the lives of more than one.

There is another error in instructions which bears discussion. The following definition of murder was included in the instruction given by the law officer:

"The unlawful killing of a human being while engaged in an act inherently dangerous to others without any intent to cause the death of, or great bodily harm to, any particular person, or even with a wish that death may not be caused is murder if the performance of the act shows a wanton disregard for human life."

In United States v. Joe L. Davis, 2 USCMA 505, 10 CMR 3, decided May 14, 1953, and United States v. Holsey, 2 USCMA 554, 10 CMR 52, decided May 28, 1953, we held that that arm of the crime of murder does not apply when the act is directed solely against one person. The facts in this case bring the crime within the limitations expressed in those cases. It, therefore,

**375**

follows that the law officer incorrectly informed the members of the court-martial when he told them they could find the accused guilty if they found he acted in a way inherently dangerous to others without an intent to kill or to do great bodily harm to any particular person. His acts may have been inherently dangerous to, and may have shown a wanton disregard for, the life of the victim, but that theory of murder has been rejected by us. If it fails for the substantive offense, it fails as a supporting element for an assault.

For the foregoing reasons, we reaffirm the doctrine that assault with intent to murder should ordinarily mean assault with intent to kill and that instructions should be given which are consistent with that rule. The decision of the board of review is reversed and the cause remanded to The Judge Advocate General of the Army for reference to a board of review for consideration of either a finding on a lesser included offense or a rehearing.

BROSMAN, Judge (concurring in the result):

I concur in the result.

QUINN, Chief Judge (dissenting):

I dissent.

We have consistently held that instructions relative to a specific intent must be limited to the particular intent charged, and that the failure to tailor the instructions to fit the intent charged constitutes error. United States v. Russell L. Williams, 1 USCMA 186, 2 CMR 92, decided February 21, 1952; United States v. Hemp, 1 USCMA 280, 3 CMR 14, decided April 8, 1952; United States v. Jenkins, 1 USCMA 329, 3 CMR 63, decided April 21, 1952. This error does not require reversal, however, unless it can fairly be said that reasonable men would be misled by the instructions. The norm by which we shall test for prejudice is "whether the facts, as brought out at the trial, point so clearly to only one type of intent that it is not possible to believe that the court could have premised its findings of guilt on any type other than that charged." United States v. Jack G. Johnson, 1

USCMA 536, 4 CMR 128, decided August 7, 1952. See also United States v. Jenkins, *supra;* United States v. Moynihan, 1 USCMA 333, 3 CMR 67, decided April 21, 1952; United States v. Boone, 1 USCMA 381, 3 CMR 115, decided May 9, 1952; United States v. Cooke, 1 USCMA 421, 4 CMR 13, decided June 3, 1952; United States' v. Justice, 1 USCMA 643, 5 CMR 71, decided August 28, 1952.

In United States v. Jenkins, *supra,* a unanimous court placed its stamp of approval upon the following basis for this view:

"While we desire to protect adequately the rights of an accused, we can not found prejudice on every inaccuracy in instructions. Technical errors and minor inaccuracies will creep into the trial of law suits and appellate courts can not administer justice fairly by failing to appreciate that the trial of criminal cases is a practical business, which can not be carried on with perfection. The best we can do is to place our stamp of disapproval on the error and then affirm only those cases where the irregularity does not touch the merits of the findings."

In that opinion, the analogy of evidence placed upon a scale to determine whether prejudice was present was adopted in the following language:

". . . . This whole proceeding is weighted so overwhelmingly with evidence indicating an intent to avoid hazardous duty that a reasonable mind would have to ignore one side of the scale which was heavily loaded to choose the other which held barely a scintilla. Our understanding of human behavior leads us to believe that when the scales are so obviously out of balance reasonable minds would not be confused or misled as to which intent could be inferred from the facts."

Again in United States v. Moynihan, *supra,* this Court unanimously declared:

"It is not reasonable to conclude that, when you have a mountain of evidence on one side from which an inference of one intent is compelled,

and a molehill on the other from which a different intent might be inferred, the members of a court-martial would miss the mountain and see the molehill. . . ."

Although in the cases cited we were concerned exclusively with the offense of desertion, I am convinced that the principles therein enunciated are equally applicable to other instances involving multiple intents. To adopt another rule solely because the offense involved is different is illogical, inconsistent, unrealistic, and altogether out of keeping with plain common sense.

Applying the foregoing principles to the instant case, I agree that the all-inclusive nature of the law officer's instructions constituted error. This conclusion is compelled by our decision in United States v. Floyd, 2 USCMA 183, 7 CMR 59, decided February 12, 1953. However, in testing for prejudice, I find a possibility of reasonable men perceiving only two possible intents—premeditated murder, or—because of the evidence of intoxication—unpremeditated murder. Here, as the majority opinion points out, the accused announced his intention of killing his victim, procured the means, and, when only six feet away, commenced firing. He desisted only when his weapon jammed—a circumstance over which he had absolutely no control. Had the death of his victim ensued, a finding of premeditated murder would have followed necessarily, unless the evidence of intoxication justified reduction of the crime to unpremeditated murder. See United States v. Ginn, 1 USCMA 453, 4 CMR 45, decided July 10, 1952; United States v. Black, 3 USCMA 57, 11 CMR 57, decided July 10, 1953. Certainly the evidence of intoxication could not reduce the crime below that of unpremeditated murder.

Not even a scintilla of evidence tending to show that this accused was engaged "in an act inherently dangerous to others without any intent to cause the death of, or great bodily harm to, any particular person, or even with a wish that death may not be caused" was before the court-martial. There is not even a shred of evidence which could be tortured by forced or fallacious reasoning into an inference that he was so engaged. To find prejudice to the substantial rights of the accused, it is necessary to conclude that there was a fair possibility that reasonable minds would be confused or misled as to which intent could be inferred from the facts.

Finding no such possibility on the facts of this case, I would affirm the decision of the board of review.