UNITED STATES, Appellee

v.

JOHN H. MALONE, JR., Private E–1, U. S. Army, Appellant

4 USCMA 471, 16 CMR 45

472

No. 4158

Decided July 2, 1954

MAJ Edwin Doran, U. S. Army, and 1ST LT Richard B. Dempsey, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1ST LT Ezra B. Jones, Jr., U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The accused was convicted, following trial by general court-martial convened at Fort Lewis, Washington, of assault with intent to commit voluntary manslaughter, in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. He was sentenced to receive a dishonorable discharge, as well as to total forfeitures and confinement at hard labor for one year. The convening authority suspended the execution of the punitive discharge, but otherwise approved the findings and sentence. The board of review affirmed, and the case is before this Court on petition of the accused.

II

The record discloses that the accused and another soldier named Cutler became involved in an argument while returning to their barracks during the early morning hours of July 7, 1953. The disagreement was continued after they reached the second-floor room in which they slept, and there they engaged in a wrestling match. Over the protests of other soldiers quartered in the same area, this brawling continued intermittently for some time, interrupted by preparations for sleep. After each encounter had ended and the parties had separated by mutual consent, the accused sought out Cutler's bed and renewed hostilities. Following one of these episodes, Cutler—having warned the accused to cease annoying him—produced a .25 calibre automatic pistol and fired one shot in the direction of a window for the purpose of communicating to his adversary the fact that the weapon was in firing condition. Notwithstanding this, the accused sought to pursue the matter further and proceeded to oust Cutler from his bunk. The latter thereupon thrust accused away and fired one shot which struck him in the abdomen. Staggering to his own bunk and refusing an offer of assistance from another soldier, the accused drew a small calibre pistol from his pillow and concealed himself in an embrasure formed by a chimney near his bed. Shortly thereafter he stepped into the room and discharged two shots in the direction of Cutler, who returned the fire. One of the accused's slugs struck Cutler in the abdomen, and both parties subsequently collapsed. They were removed to the base hospital where exploratory surgery revealed that neither had been wounded seriously.

Prior to the present trial, Cutler had been convicted of assault with intent to commit voluntary manslaughter as a result of his participation in the affair described in the preceding paragraph. Because of certain alleged inconsistencies and omissions in the law officer's instructions to the court-martial, appellate defense counsel urge that a similar conviction in the case at bar cannot stand. Specifically, they argue that convictions of assault with intent to commit voluntary manslaughter must be limited to those situations which involve an intent to *kill;* that assault in which grievous bodily harm is intentionally inflicted is a lesser included offense rea-

**473**

sonably raised by the evidence in this case; and that the failure of the law officer properly to instruct the court in this regard was prejudicial to the accused.

### III

Assault with intent to commit voluntary manslaughter is punishable under Article 134 of the Code, supra. According to the Manual for Courts-Martial, United States, 1951, paragraph 213*d* (1)(*b*), this offense is characterized as an "assault committed with intent to do an act which, if death resulted therefrom, would be voluntary manslaughter." This latter offense is defined and proscribed by the Uniform Code, Article 119(*a*), 50 USC § 713, which provides that:

"Any person subject to this code who, with an *intent to kill or inflict great bodily harm,* unlawfully kills a human being in the heat of sudden passion caused by adequate provocation is guilty of voluntary manslaughter and shall be punished as a court-martial may direct." [Emphasis supplied.]

It is thus apparent that a conviction of voluntary manslaughter may be predicated on a finding that ▮▮▮▮▮ ▮ an accused person acted with an intent either to kill or to inflict great bodily harm. See Manual, supra, paragraph 198*a*. Equally manifest is it that if—in a prosecution for assault with intent to commit voluntary manslaughter—the law officer were to define voluntary manslaughter in terms of Article 119(*a*) alone, a court-martial might properly find an accused guilty, although its members believed that he intended no more than to inflict great bodily harm.

This possibility becomes noxious on examination of the provisions of Article 128, Uniform Code, 50 USC § 722, which defines the two sorts of aggravated assault as follows:

"(*b*) Any person subject to this code who—
"(1) commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm; or

"(2) commits an assault and intentionally inflicts grievous bodily harm with or without a weapon; is guilty of aggravated assault and shall be punished as a court-martial may direct."

The Manual, supra, paragraph 127*c*, Table of Maximum Punishments, prescribes the following penalties for the offenses discussed above: Assault with intent to commit voluntary manslaughter: 10 years; assault with grievous bodily harm intentionally inflicted: 5 years; assault with a dangerous weapon: 3 years. It will be observed that, with respect to confinement, the maximum penalty assessed for the crime of assault with intent to commit voluntary manslaughter is double that permitted for an assault with grievous bodily harm intentionally inflicted—although, as we have suggested elsewhere, the line of demarcation separating an act manifesting an intent to kill from one evidencing merely an intent to inflict grievous bodily harm is virtually unrecognizable. See United States v. Holman, 3 USCMA 396, 12 CMR 152.

It is clear that, if the law officer's instructions here would permit conviction of assault with intent ▮▮▮▮▮ ▮ to commit voluntary manslaughter following a finding of intent merely to inflict grievous bodily harm, the accused has been prejudiced. It is to be noted, we believe, that the definition of assault with intent to commit voluntary manslaughter contained in the Manual—that is, one which includes an intention "to do an act which, if death resulted therefrom would be voluntary manslaughter"—is not susceptible of unqualified application. Under Article 119(*a*), either an intent to kill, or one to inflict great bodily harm, will sustain a conviction of voluntary manslaughter. In cases of assault, however, while the existence of an intent to kill will support a conviction of assault with intent to commit voluntary manslaughter, the same assault, accompanied by a purpose to inflict grievous bodily harm only, will do no more than support a conviction of the variety of aggravated assault specified in Article 128(*b*)(2). If, therefore, a conviction of assault with intent

to commit voluntary manslaughter may be predicated on a mere design to inflict grievous bodily harm, then proof sufficient to establish the elements of the lesser offense of aggravated assault may form the basis for a conviction of the more serious charge, with its attendant heavier penalty. Assuming the court-martial in such a case based its conviction on a finding of intent to inflict grievous bodily harm, the accused will have been convicted on evidence supporting only the former offense, yet he could be sentenced under the latter.

For these reasons we are of the opinion that assault with intent to commit voluntary manslaughter must be limited to that species of the offense characterized by an intent to kill. This conclusion was foreshadowed by our decision in United States v. Floyd, 2 US CMA 183, 7 CMR 59—where an analogous situation involving assault with intent to murder was considered. In that case we held that—when used as a basis for an assault charge—the term "murder" must be limited to homicides involving an intent to *kill*. Otherwise, in certain factual situations, assault with intent to murder may be equivalent to the aggravated assaults specified in Article 128, supra, and other aggravated assaults included within Article 134. The rationale of that case—and other decisions of this Court reaffirming it— is precisely applicable to the instant problem. Cf. United States v. Woodson, 3 USCMA 372, 12 CMR 128; United States v. Holman, supra.

Implicit in the foregoing discussion is the view that assault in which grievous bodily harm is inten- tionally inflicted is a lesser offense included within assault with intent to commit voluntary manslaughter. We are not unmindful of the provisions of paragraph 158 of the Manual, which are set out hereafter:

"An offense found is necessarily included in an offense charged if all the elements of the offense found are necessary elements of the offense charged. An offense is not included within an offense charged if it requires proof of any element not required in proving the offense charged or if it involves acts of which the accused was not apprised upon his arraignment."

In this connection we note that conviction of assault with grievous bodily harm intentionally inflicted necessitates proof of an element in addition to those required for conviction of assault with intent to commit voluntary manslaughter. In addition to the assault and concomitant intent requisite in both offenses, it must be shown in the former offense that grievous bodily harm was in fact inflicted. Manual, supra, paragraphs 207*b* and 213*d*(1). However, we are not forced for this reason to depart from the view expressed earlier herein. In United States v. Davis, 2 USCMA 505, 10 CMR 3, we indicated that the language of paragraph 158 was intended to furnish merely a "working test" for the recognition of lesser included offenses, and we there illustrated its inutility with respect to the offense of murder. We also pointed out that "whether a lesser degree of homicide is necessarily included within that charged depends almost exclusively on *the facts stated and proved in support of the offense alleged.*" By way of formulating a general rule with respect to the offense of homicide, we stated that an accused may be convicted of guilt "in the degree of homicide charged, or in any lesser degree, *provided that the lesser degree is established by the evidence* adduced as a reasonable alternative to the offense alleged." Our conclusion in that case, concerning the paramount importance of the evidence offered in support of the principal offense in the recognition of lesser included offenses, is applicable with equal force to the various types of assault under Articles 128 and 134.

Nor does the fact that aggravated assault is not listed in the Table of Commonly Included Offenses, Manual, supra, Appendix 12, as a lesser included offense to the crime charged here, disturb this conclusion. By way of comparison it is perhaps not without significance that both aggravated assault and assault with intent to commit voluntary manslaughter are specified among the offenses which may be included within a charge of voluntary manslaughter.

Manual, supra, paragraph 198a. In the recent case of United States v. Duggan, 4 USCMA 396, 15 CMR 396, in which we held that riot properly may be regarded as a lesser included offense to mutiny by violence, Judge Latimer, speaking for the Court, observed:

"We are aware that riot is not listed with mutiny in the Table of Commonly Included Offenses (Appendix 12, Manual for Courts-Martial, supra). However, the note to that table expressly states that it is not all-inclusive. . . . Accordingly, we must look to the allegations of the specification, and proof in support thereof, in each case to determine whether a lesser offense is placed in issue. While the standards we have adopted in considering whether one offense is included in another may be more generous than those prescribed by other courts, in an unbroken line of decisions we have made the test turn on both the charge and the evidence. When both offenses are substantially the same kind so that accused is fairly apprised of the charges he must meet and the specification alleges fairly, and the proof raises reasonably, all elements of both crimes, we have held they stand in the relationship of greater and lesser offenses."

Thus, we conclude that—when comprehended within the allegations and proof—assault in which grievous bodily harm is intentionally inflicted is a lesser offense included within assault with intent to commit voluntary manslaughter. So far as the specification is concerned, no difficulty is encountered in the case at bar. The single specification here alleges that the accused "did, at Fort Lewis, Washington, on or about 7 July 1953, with intent to commit voluntary manslaughter, commit an assault upon Private Lawrence W. Cutler, by shooting him with a pistol." We are sure that this language may be interpreted fairly to allege the necessary elements of the lesser offense, and is sufficient to inform the accused of what he must meet at trial.

## IV

We turn now to inquire whether this lesser offense was reasonably raised by the evidence adduced in the █ case at bar. We believe that it was. The record reveals that the accused and his victim were cousins, attached to the same unit, and quartered in the same barracks at Fort Lewis. Prior to the commencement of the argument on the night in question, they had been off-station with another soldier for an evening of beer-drinking—and the trio had consumed some three or more quarts of that beverage. Several witnesses to the shooting, and to the events preceding it, testified that both parties were intoxicated, but not to such an extent as to be unaware of what they were doing. Although the accounts of the occurrence are somewhat contradictory, it is clear that—until the actual shooting took place—the altercation amounted to no more than a difference of opinion as to who hit whom first, with neither party disposed to yield on the point. One witness testified that at one juncture during the disturbance, the accused assured Cutler that he did not wish to engage him physically, and that after Cutler had fired his warning shot, the antagonists had shaken hands and terminated the argument temporarily.

There was also evidence tending to show that the accused was in a state of confusion and astonishment after he had been wounded. The principal witness for the prosecution testified that—after procuring his pistol, and before exchanging shots with Cutler—the accused stood within the protection of the chimney saying repeatedly, "You shot me, Cutler. You shot me." Moreover, after wounding Cutler and again withdrawing within the shelter of his chimney niche, the accused, Malone, volunteered to discard his pistol if Cutler would do the same. This offer Cutler refused. The soldier who had offered assistance to Malone testified that the latter continued to repeat his proposal although he had been informed that Cutler was no longer present. It was not contradicted that Malone was unarmed at the time he was wounded, or that Cutler was facing him with a loaded pistol when he stepped into the room and fired at his victim.

In light of this evidence, and upon a thorough search of the record in its entirety, we are convinced that the court could properly have found that the accused had no intention to kill when he fired at Cutler. Although it is true that the evidence equally supports a contrary finding, it does not exclude a reasonable inference that the lesser offense was committed. Certainly it may not be said that a conviction of the offense of aggravated assault would have manifested an utter disregard of the evidence on the part of the court-martial. Since this lesser offense was presented as a reasonable alternative to the crime charged, it was incumbent on the law officer to supply appropriate instructions concerning its elements. United States v. Clark, 1 USCMA 201, 2 CMR 107; United States v. Roman, 1 USCMA 244, 2 CMR 150; United States v. Burr, 2 USCMA 182, 7 CMR 58; United States v. Burden, 2 USCMA 547, 10 CMR 45.

V

This brings us to a consideration of whether the law officer's instructions fully and fairly apprised the court of the lesser offense of assault with grievous bodily harm intentionally inflicted. Appellate defense counsel contend vigorously that they did not, and that the instructions given were fatally contradictory. We cannot agree with either of these contentions. After defining voluntary manslaughter in the precise terms of Article 119 (a), the law officer enumerated its elements to be:

"(1) That the victim named or described is dead;
"(2) That his death was caused, without justification or excuse, by an unlawful act of the accused, as alleged, and
"(3) That at the time of the killing, the accused intended to kill."

In addition, he used the following pertinent language:

". . . Thus, for the accused to be charged with an intent to commit voluntary manslaughter in this case means that he intended to kill. An intent to commit grievous bodily harm is not sufficient intent to find the accused guilty of the offense here charged. You must find that he intended to kill if you find the accused guilty of the offense here charged.

• • • • • •

"You are further advised in connection with the Specification of the Charge in this case, that if you have a reasonable doubt that the accused intended to commit voluntary manslaughter, but you are satisfied by legal and competent evidence beyond a reasonable doubt that the accused intended only to inflict grievous bodily harm, you may, nevertheless, reach a finding of guilty, but in that event it will be necessary that you modify the specification by appropriate exceptions and substitutions so that it will reflect a finding as to which you have no reasonable doubt.

• • • • • •

". . . Grievous bodily harm does not include minor injuries such as a black eye, et cetera. The term does include serious bodily injuries: fractured bones, serious damage to internal organs, torn members of the body, deep cuts.

"The court may recall my reference to exceptions and substitutions previously made, and I instruct the court that that reference would here apply if a violation of Article 128 of the Uniform Code of Military Justice is found to have occurred instead of the offense charged.

"If in the court's deliberations it desires to consider any other offense as a lesser included offense, it must reopen and request the law officer's advice as to whether such offense is lesser included, and, if so, receive instruction as to the elements thereof."

On the whole we believe that the law officer's instructions adequately—if not inartfully—comprehended the lesser offense. The court was informed that in order to convict it would be necessary to find that the accused inflicted injury to Cutler's person—and a definition of grievous bodily harm was set out. The law officer also advised the court of the possibility of a finding that the accused acted with an intent to inflict such

harm, rather than with a purpose to kill—and there was uncontroverted evidence that bodily harm was in fact inflicted. While the instructions do not refer to the offense in the precise terms of the Code or Manual, and its elements are not specified in one particular portion of the instructions, we do not believe that it can be said that the court-martial was without a legal standard to guide its deliberations.

Finally, it is apparent from a mere reading of the instructions that the contention that they were contradictory is wholly without merit. On this point defense counsel argue that the instructions furnished permitted conviction of the accused following a finding of intent only to inflict grievous bodily harm. On the contrary, it is quite clear to us that the law officer took great pains to insure that such a misunderstanding should not result. His instructions make it perfectly plain that, to convict of the offense charged, the court was obliged to find that the accused acted with a purpose to *kill*. In this connection, he went so far as to specify that an intent to kill was a necessary element of voluntary manslaughter. While this would be an incorrect statement of law were an offense involving homicide under consideration, it is—as we have pointed out—a proper limitation when voluntary manslaughter is used as the basis for an assault charge. It is true that the law officer did state in one part of his charge that, if the court was satisfied that the accused intended to commit grievous bodily harm only, its members might yet reach a finding of guilty. However, in the selfsame sentence, he qualified this assertion by pointing out that it would then be necessary to modify the specification by means of appropriate exceptions and substitutions in order to reflect a finding of the lesser offense. In addition, we observe that defense counsel took no exception to the instructions as given, and made no request for clarification or elaboration. We have frequently held that this burden rests on defense counsel in the instance of an inartful but minimal charge. United States v. Soukup, 2 USCMA 141, 7 CMR 17; United States v. Offley, 3 USCMA 276, 12 CMR 32.

VI

We thus conclude that no fair risk of prejudice to the substantial rights of the accused was presented in the law officer's instructions. Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.