UNITED STATES, Appellee

v.

ARTHUR "C" BARNES, Staff Sergeant, U. S. Marine Corps, Appellant

5 USCMA 792, 19 CMR 88

No. 6041

Decided May 13, 1955

MAJ Charles J. McCaffrey, USMCR, for Appellant.
CAPT James A. Turley, USMCR, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Tried by a Navy general court-martial sitting at Camp Lejeune, North Carolina, the accused was acquitted under a number of the specifications lodged against him. However, *inter alia,* he was found guilty of having made "with intent to commit murder, . . . an assault upon Mrs. Thelma Sams by shooting her twice with a pistol and thereby inflicting grievous bodily harm"—in violation of the Uniform Code of Military Justice, Article 134, 50 USC § 728. He was sentenced to be dishonorably discharged from the service, as well as to total forfeitures, confinement at hard labor for ten years, and reduction to rank of Private. All findings of guilty returned by the court-martial were approved on review below, but the sentence to confinement was halved. We granted Barnes' petition to determine whether he was prejudiced by the law officer's instructions on assault with intent to commit murder.

II

On June 9, 1954, the accused went to a place called Humphrey's located near Jacksonville, North Carolina. The exact nature of this establishment was not made clear at the trial, although there were suggestions from defense counsel that it was a house of ill fame.

In any event, the petitioner was able to obtain there a local drink termed "white lightning," one of undefined composition but undisputed potency. After ingestion of a quantity of this distillate, he engaged in a protracted physical encounter with a Mrs. Sams, who had previously drunk with him. This scuffle lasted for "about thirty minutes," according to the victim, and was sufficiently ambiguous in purpose that the court-martial also had before it for consideration a charge of assault with intent to rape. This, however, was one of three specifications of assault with that intent of which the court exonerated the accused—indeed, not only with respect to intent, but as to assault as well. Barnes, Mrs. Sams stated, "looked like he was wild-eyed after he had drinked that white lightening [sic]"—and, because of his grotesque appearance and threatening conduct, she sought to terminate the passage by throwing at him a gallon mason jar filled with water. In light of later events, Mrs. Sams expressed regret at the hearing that she had not had at hand a more nearly lethal missile.

Barnes then departed for his automobile and some twenty minutes later returned to the house armed with a pistol. Mrs. Sams was at that time located "a few steps" to the rear of the

**793**

structure. She was able to proceed no farther, however, for the accused shot her twice, inflicting wounds which required hospitalization for ten days. But as she lay on the ground, Barnes approached her and stated that he was sorry he had wounded her, and that he had not meant to do so. Not long afterward he left the scene.

At the trial the accused admitted that he had possessed a pistol at Humphrey's and that he "must have" shot Thelma Sams. However, he emphasized that:

"I just don't remember nothing about it. Some of that whiskey is good and some of it is no good at all."

Against this evidentiary backdrop, the law officer informed the court-martial, with reference to the alleged intent to commit murder, that the charged offense may be said to exist if "at the time of the killing, the accused intended to kill *or inflict great bodily harm."* (Emphasis supplied.) At a later point he stated that "the only intent involved is the intent to kill *or to do grave bodily harm."* (Emphasis supplied.)

### III

In United States v. Woodson, 3 USCMA 372, 12 CMR 128, we said:

". . . We are satisfied that Congress did not intend such an unjust result and that assault with intent to murder must be limited to intent to kill, or, under certain circumstances, to acts inherently dangerous which show a wanton disregard for the lives of more than one." [See also United States v. Floyd, 2 USCMA 183, 7 CMR 59.]

In United States v. Christensen, 4 USCMA 22, 15 CMR 22, and earlier in United States v. Bentley, 3 USCMA 625, 14 CMR 43, we were compelled to reverse findings of guilty under specifications alleging assaults with intent to murder because, in light of instructions supplied by the law officer, we thought it dangerously possible that the court-martial in each case might have rested the conviction it returned on no more than an intent to do grievous bodily harm, and not on a specific purpose to kill. The error present in the cases cited above is revealed clearly in the instant record of trial.

We have given thought to the possibility that—considered as a whole—the lengthy, elaborate and somewhat repetitive instructions furnished here may have minimized to an area of safety the peril resulting from the law officer's incorrect language set out in an earlier paragraph. However, a careful reading of the entire charge causes us seriously to doubt that reasonable men would have understood that, in order to find the accused guilty, it must also be found that he had intended to kill Mrs. Sams, and not merely to harm her seriously.

In both Bentley and Christensen there was—as here—strong evidence of an intention to kill. Yet we considered in those cases that the accused might well have been prejudiced through use of the erroneous instruction. Apposite here, we believe, is our pronouncement in Christensen:

". . . Indeed, in assault cases involving similar circumstances and instructions, we would be inclined normally to deem the law officer's error prejudicial—in the absence of a showing that the accused had indicated not only that he intended to shoot his victim, as he did here, but also that he intended to *kill* him."

Under this principle we must hold that the accused, Barnes, was prejudiced by the law officer's instructions.

### IV

Accordingly, we are able to affirm no more than a finding of aggravated assault resulting in the intentional infliction of grievous bodily harm, in violation of the Code's Article 128(*b*)(2), 50 USC § 722. The record of trial is returned to the board of review for possible revision of sentence.

Judge LATIMER concurs.

QUINN, Chief Judge (dissenting):

I dissent.

I agree with the majority that the law officer's instructions were errone-

ous. However, no intent other than that of an intent to kill was reasonably raised by the evidence. Consequently, the accused was not harmed by the erroneous instruction. United States v. Moynihan, 1 USCMA 333, 3 CMR 67.