UNITED STATES, Appellant

v

JOHN PITTS, JR., Airman Third Class,
U. S. Air Force, Appellee

12 USCMA 634, 31 CMR 220

No. 15,382

February 2, 1962

*Major James Taylor, Jr.*, argued the cause for Appellant, United States. With him on the brief was *Colonel Merlin W. Baker.*

*Major William A. Crawford, Jr.*, argued the cause for Appellee, Accused. With him on the brief was *Colonel Joseph E. Krysakowski.*

## Opinion of the Court

FERGUSON, Judge:

The accused was tried by general court-martial upon a charge of assault with intent to commit murder, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. He was found guilty of assault with intent to commit voluntary manslaughter, in violation of the same Article. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for five years, and reduction to the lowest enlisted grade. An Air Force board of review concluded that the law officer had erred in his instructions on the offense found and, believing it could not approve any higher degree of culpability because of the allegations of the particular specification, affirmed only assault with a dangerous weapon, in violation of Code, supra, Article 128, 10 USC § 928, and only that portion of the sentence which provided for dishonorable discharge, forfeiture of all pay and allowances, reduction, and confinement at hard labor for two years. The Judge Advocate General of the Air Force has certified the following questions with respect to the propriety of the board's decision:

"a. WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT THE LAW OFFICER'S INSTRUCTIONS AS TO THE OFFENSE OF ASSAULT WITH INTENT TO COMMIT VOLUNTARY. MANSLAUGHTER WERE PREJUDICIALLY ERRONEOUS AND PRECLUDED AFFIRMANCE OF THE FINDINGS OF GUILTY OF THAT OFFENSE?

"b. IF THE FIRST CERTIFIED ISSUE IS ANSWERED IN THE AFFIRMATIVE, WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT, IN THE CIRCUMSTANCES OF THIS CASE, INTENTIONAL INFLICTION OF GRIEVOUS BODILY HARM WAS NOT A LESSER INCLUDED OFFENSE OF THE ALLEGED ASSAULT WITH INTENT TO COMMIT VOLUNTARY MANSLAUGHTER?"[1]

The specification upon which accused was tried, as modified by the findings of guilty, is as follows:

"In that Airman Third Class John Pitts, Junior, United States Air Force, 3407th School Squadron, 3380th Technical School, did, at Keesler Air Force Base, Mississippi, on or about 29 January 1961, with intent to commit voluntary manslaughter, commit an assault upon Airman Third Class Marvin G. Hicks by shooting him three times with a pistol."

In his final instructions to the court, the law officer correctly delineated the elements of the offense charged. With

---

[1] Counsel for both sides have filed a stipulation with the Court in which it is agreed that the word "murder" should be substituted for the phrase "voluntary manslaughter" in this second question. The view which we take of the issue before us renders the change immaterial.

respect to the lesser included offense of assault with intent to commit voluntary manslaughter, he set forth each element, including the need to find that the accused, at the time of his assault upon Hicks, "intended to commit voluntary manslaughter." Thereafter, he defined that offense in terms of its elements, one of which was stated to be that "at the time of the killing the accused had the intent to kill." Following this definition, he further discussed the lesser included offense in the following terms:

"The offense of voluntary manslaughter is committed when an accused, *with intent to kill or inflict great bodily harm,* unlawfully kills a human being in the heat of sudden passion caused by adequate provocation. The killing of a human being is unlawful when done without justification or excuse. The presence of this provoked passion reduces to voluntary manslaughter an offense that would otherwise be murder, but it is not justification or excuse for killing.

"Although as to the lesser offense of assault with intent to commit voluntary manslaughter it is not essential to prove that any person was killed, the specific *intent* of the accused to kill is a necessary element of the lesser included offense, and the prosecution must establish the existence of the specific intent beyond a reasonable doubt." [Emphasis partially supplied.]

The board of review found that an essential element of assault with intent to commit voluntary manslaughter was that the accused must have acted with the specific intent to kill. It examined the quoted instructions of the law officer and concluded that they permitted the court-martial to convict the accused upon a finding either that he intended to kill Hicks or that he intended to inflict great bodily harm upon him. As the advice thus set forth two standards by which guilt was to be measured—one correct and one incorrect—it was deemed prejudicially erroneous. See United States v Noe, 7 USCMA 408, 22 CMR 198, and United States v McIntosh, 12 USCMA 474, 31 CMR 60.

The Government candidly concedes before us that the offense of assault with intent to commit voluntary manslaughter requires a finding that accused specifically intended to kill his victim. It also admits that an instruction which sets forth two inconsistent standards by which guilt is to be measured is prejudicially erroneous. Nonetheless, it contends that neither of these principles are violated by the law officer's advice in this case, for he clearly limited use of intent to inflict great bodily harm to a definition of the consummated offense of voluntary manslaughter and so emphasized the need for the court members to find a specific intent to kill that they could not have been led astray. We must express our disagreement with this interpretation of the instructions.

In United States v Malone, 4 USCMA 471, 16 CMR 45, the accused was convicted of assault with intent to commit voluntary manslaughter. Before us, it was unsuccessfully argued that the instructions permitted findings of guilty to be based upon either an intent to kill or an intent to inflict great bodily harm. While the defense contention was ultimately rejected, this Court concluded that only an intent to kill would suffice to establish this type of assault, for to permit findings of guilty with regard to that crime to be predicated upon an intent to inflict great bodily harm would entirely erase the distinction between it and assault whereby grievous bodily harm was intentionally inflicted, in violation of Code, supra, Article 128. Thus, in the *Malone* case, we said, at page 475:

"For these reasons we are of the opinion that assault with intent to commit voluntary manslaughter must be limited to that species of the offense characterized by an intent to kill. This conclusion was foreshadowed by our decision in United States v Floyd, 2 USCMA 183, 7 CMR 59—where an analogous situation involving assault with intent to murder was considered. In that case we held that—when used as a basis for an assault charge—the term 'murder' must be limited to homicides involving an intent to *kill.* Otherwise, in

636

certain factual situations, assault with intent to murder may be equivalent to the aggravated assaults specified in Article 128, supra, and other aggravated assaults included within Article 134. The rationale of that case—and other decisions of this Court reaffirming it—is precisely applicable to the instant problem."

From the foregoing, it follows that the law officer's reference here to an intent to inflict great bodily harm was erroneous, and it cannot be gainsaid that it was inserted in his instructions in such a manner that it may have been used by the court-martial to measure the accused's guilt with respect to the offense found.

It is to be noted that the law officer, in first listing the elements of the lesser offense, required the court-martial to find that the accused, in perpetrating his assault, intended to commit voluntary manslaughter. He then defined the latter offense to the court as involving either an intent to kill or an intent to inflict great bodily harm. As the victim had appeared before the court and testified, it was quite obvious that the crime of voluntary manslaughter had not been consummated and, at that point, the court-martial was left, by substitution of the definition's language for the element of intent to commit voluntary manslaughter, to measure accused's guilt on the basis whether he had assaulted Hicks, in heat of a reasonably provoked passion, intending either to kill him or to inflict great bodily harm on him. Our decision in United States v Malone, supra, clearly teaches that this advice was erroneous.

True it is that the law officer thereafter informed the court-martial that it must find that accused assaulted Hicks, specifically intending to kill him, but he made no attempt to relate this to his former advice in such a manner that the court-martial was told that it could only apply this latter standard in determining the issue of guilt or innocence. Rather, his advice set forth two separate species of intent either of which, if found to exist beyond a reasonable doubt, would apparently suffice for a conviction. In such an instance, it is clear that prejudice resulted, for we have no way of ascertaining whether the court members applied the right or the wrong standard during their deliberations. United States v Noe, supra; United States v McIntosh, supra.

Nor are we inclined to adopt the Government's contention that the evidence in this record so compels the conclusion that accused intended to kill Hicks that the law officer's advice could not have misled the court members. The record reflects that a minor altercation occurred between the parties on the night of January 28, 1960. On the following day, the victim, accompanied by several other persons, was walking toward the Enlisted Men's Club. Seeing the accused approach, he swerved into his path and asked "was he looking for me." Accused moved his hands, and Hicks struck him in the face, knocking him to the ground. The accused arose and ran across the street, Hicks swiftly pursuing. Accused then turned, drew a .25 caliber pistol, and fired several shots, three of which struck Hicks' body. Accused continued his flight but evenually surrendered to an Air Force officer on the same evening. At the trial, he expressly denied any intent to kill Hicks. Under such circumstances, it can hardly be concluded that the court members were led by the evidence unerringly to the conclusion that accused intended to kill Hicks. Compare United States v Malone, supra. Rather, we believe a substantial factual question existed concerning the degree of his guilt. Indeed, such is evidenced by the court's rejection of the offense charged.

It follows that the first certified question must be answered in the affirmative.

The second issue before us arises from the conclusion of the board of review that the allegations of the particular specification before it did not permit purging of the instructional error by affirmance of assault whereby grievous bodily harm was intentionally inflicted. Accordingly, it approved only the offense of assault with a dangerous

**637**

weapon. The board reasoned that an allegation that accused assaulted Hicks "by shooting him three times with a pistol" did not sufficiently aver consummation of an aggravated assault.

Once more, we must conclude that our decision in United States v Malone, supra, is dispositive. There, ▇▇▇▇ we expressly pointed out that assault whereby grievous bodily harm was intentionally inflicted, in violation of Code, supra, Article 128, was a lesser included offense of assault with intent to commit voluntary manslaughter. United States v Malone, supra, at page 475. See also United States v Shelton, 4 USCMA 116, 15 CMR 116. Moreover, the specification in the *Malone* case averred that the accused committed assault with intent to commit voluntary manslaughter upon his victim " 'by shooting him with a pistol.' " Of such an averment, it was said at page 476:

". . . We are sure that this language may be interpreted fairly to allege the necessary elements of the lesser offense, and is sufficient to inform the accused of what he must meet at trial."

The specification before us differs from that involved in *Malone*, supra, only in alleging the number of times the accused shot Hicks. Accordingly, we believe that our former decision governs here and that the specification is sufficient to set forth a consummated aggravated assault. The second certified question must, therefore, be answered in the negative.

The first certified question is answered in the affirmative. The second certified question is answered in the negative. The decision of the board of review is reversed with respect to the second issue and the record of trial is returned to The Judge Advocate General of the Air Force. The board may affirm the lesser offense of assault whereby grievous bodily harm was intentionally inflicted and reassess the sentence on the basis of that finding.

Judge KILDAY concurs.

QUINN, Chief Judge (concurring in part and dissenting in part):

The general statement that voluntary manslaughter is committed "when an accused, with intent to kill or inflict great bodily harm, unlawfully kills" another in heat of sudden passion is so juxtaposed between correct specific instructions on the actual intent required for the lesser offense that there is, in my opinion, no fair risk the court-martial was misled as to the law. Immediately before the statement the law officer listed seriatim the elements of voluntary manslaughter, one of which was that "at the time . . . the accused had the intent to kill." Immediately after the general statement he instructed the court-martial that "the specific intent of the accused to kill is a necessary element of the lesser included offense" of assault with intent to commit voluntary manslaughter and "the prosecution must establish the existence of the specific intent beyond a reasonable doubt." Then the law officer advised the court-martial that it could convict the accused of the lesser offense only "if . . . satisfied that each of the elements of such lesser offense" was established beyond a reasonable doubt. These instructions so clearly and explicitly spell out the one intent the court-martial was required to find that there is just no room to conclude the court-martial would mistakenly convict the accused of the lesser offense on the basis of an intent to inflict great bodily harm, instead of on the basis of an intent to kill. I would, therefore, answer the first certified question in the negative.

As to the second issue, I agree with the conclusion set out in the principal opinion, and I join in the negative answer to the certified question.