UNITED STATES, Appellee,

v.

Reinaldo M. ROA, Specialist Four, U. S. Army, Appellant.

No. 39,762.
CM 439374.

U. S. Court of Military Appeals.

Jan. 18, 1982.

For Appellant: *Captain Joseph A. Russelburg* (argued); *Lieutenant Colonel John F. Lymburner, Major Robert D. Ganstine, Captain Alan W. Schon* (on brief); *Major Lawrence D. Galehouse, Major Raymond C. Ruppert.*

For Appellee: *Captain Kenneth H. Clevenger* (argued); *Major Ted B. Borek, Major Douglas P. Franklin* (on brief); *Colonel R. R. Boller, Major John T. Edwards.*

Opinion of the Court

EVERETT, Chief Judge:

In February 1980, appellant was tried at Camp Casey, Republic of Korea, by a military judge sitting as a general court-martial. Among other offenses, he was charged with four specifications of attempt-

ed murder, in violation of Article 80 of the Uniform Code of Military Justice, 10 U.S.C. § 880. As to these charges, he pleaded guilty to the lesser-included offense of assault with a weapon likely to cause grievous bodily harm, in violation of Article 128, UCMJ, 10 U.S.C. § 928. However, the military judge found him guilty as charged.[1]

The judge imposed a sentence of dishonorable discharge, confinement at hard labor for 7 years, total forfeitures, and reduction to the grade of Private E–1. The convening authority approved the findings and sentence; and the Army Court of Military Review affirmed in a short form opinion.

We granted review (10 M.J. 184) on this issue:

> WAS AN ERRONEOUS STANDARD OF LAW APPLIED AT THE TRIAL LEVEL AND BY THE STAFF JUDGE ADVOCATE IN DETERMINING THE INTENT REQUIRED FOR THE OFFENSE OF ATTEMPTED MURDER.

### I

The evidence revealed that Roa had a grudge against the military police and that, with his full encouragement and support, a fellow soldier threw a hand grenade into a military police station where four persons were present. In view of the high risk of homicide that accompanied such conduct and the inference that persons intend the natural and probable consequences of their acts, this evidence fully sufficed to sustain the judge's findings that appellant was guilty of attempted murder. Therefore, since the defense counsel did not request special findings, see para. 74*i*, Manual for Courts-Martial, United States, 1969 (Revised edition), usually it would be presumed that the judge employed a legally correct standard in reaching his findings. *Cf. United States v. Gerard*, 11 M.J. 440 (C.M.A. 1981). However, such a presumption will

not be indulged if the record of trial reveals that the judge probably utilized an erroneous standard of law in making his findings.

In the present case, the Government supplied the defense with a bill of particulars which stated two theories of liability for the charged offenses: (a) "that the accused attempted to murder the stated victims by engaging in an act which was inherently dangerous to others and evinced a wanton disregard of human life," trial counsel contending such conduct would "be an attempt to violate the provisions of Article 118(3), UCMJ," 10 U.S.C. § 918(3), and (b) "that there will be evidence to show intent on the part of the accused to 'do something' to 'teach them a lesson,' and thus kill or inflict great bodily harm," so that throwing the grenade "would ... be in attempted violation of the provisions of Article 118(2), UCMJ." When defense counsel moved early in the trial to compel the prosecution to elect between its two theories, the military judge—although deferring a ruling on the motion—remarked that "it would seem to me that 118(3) with the other elements of proof certainly is the applicable one."

Thereafter, trial counsel referred in his opening statement only to liability based on "inherent disregard for human life and the probable consequences that would have resulted from his act." Moreover, during presentation of the government's case, the judge overruled a defense objection because the evidence "goes to the 118(3) offense." Subsequently, in arguing as to guilt, trial counsel relied almost exclusively on appellant's wanton disregard of human life as the basis for convicting him of attempted murder.

At no point in the trial did the judge repudiate in any way the theory that Roa would be guilty of attempted murder if, when the grenade was thrown, he entertained the state of mind specified in Article 118(3) of the Uniform Code of Military Jus-

---

1. Pursuant to appellant's pleas, the judge also found him guilty of wrongful possession of an incendiary device, a Ration Control Plate, and an explosive device; wrongful damage to a military police station; wrongful possession of

"an undetermined amount of marihuana," in violation of Articles 92, 108, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 908 and 934, respectively.

tice. Furthermore, it is especially difficult to doubt that the trial judge relied on this theory, since subsequently the staff judge advocate in his post-trial review and appellate government counsel in their brief and oral argument in our Court have taken the position that an attempt to murder can be established under Article 118(3).

■ Our cases, however, have made it perfectly clear that attempted murder requires a specific intent to kill. *See United States v. Thomas*, 13 U.S.C.M.A. 278, 32 C.M.R. 278 (1962); *United States v. Pitts*, 12 U.S.C.M.A. 634, 31 C.M.R. 220 (1962); *United States v. Carroll*, 10 U.S.C.M.A. 16, 27 C.M.R. 90 (1958). *See also United States v. Whitfield*, 7 M.J. 780 (A.C.M.R.1979), *pet. denied*, 8 M.J. 101 (C.M.A.1979); *United States v. Aragon*, 1 M.J. 662 (N.C.M.R. 1975); *United States v. Perry*, 46 C.M.R. 636 (A.C.M.R.1972), *pet. denied*, 22 U.S.C. M.A. 609, 46 C.M.R. 1324 (1972); *United States v. Creek*, 39 C.M.R. 666 (A.B.R.1968). Although a serviceperson may be convicted of murder if he commits homicide without an intent to kill, but with an intent to "inflict great bodily harm," *see* Article 118(2), or while "engaged in an act which is inherently dangerous to others and evinces a wanton disregard of human life," *see* Article 118(3), these states of mind do not suffice to establish attempted murder.

As stated in *United States v. Perry, supra* at 639 n. 1:

Although one who does not intend to kill may commit the kind of murder denounced by Article 118(3), Uniform Code of Military Justice, 10 U.S.C. § 918(3), intentionally engaging in "an act which is inherently dangerous to others, and evinces a wanton disregard of human life," without intent to kill, does not constitute attempted murder. A particularly interesting application of this rule is found in *United States v. Creek*, 39 C.M.R. 666 (A.B.R.1968).

*See also United States v. Walentiny*, 47 C.M.R. 60 (A.C.M.R.1973); *United States v. Paul*, 46 C.M.R. 421 (A.C.M.R.1972), *pet.*

*denied*, 22 U.S.C.M.A. 607, 46 C.M.R. 1324 (1972).

Article 118(3) was intended to deal with the situation where death has occurred as a result of conduct which revealed the actor's wanton disregard for human life, but was not directed at a particular individual. *United States v. Dacanay*, 4 U.S.C.M.A. 263, 15 C.M.R. 263 (1954); *United States v. Holsey*, 2 U.S.C.M.A. 554, 10 C.M.R. 52 (1953); *United States v. Davis*, 2 U.S.C.M.A. 505, 10 C.M.R. 3 (1953). By reason of the express provisions of the statute, this mental state supplies the malice aforethought necessary for a murder conviction when a homicide results. However, especially in light of the canon of strict construction of penal statutes, Article 118(3) cannot be taken to mean that for all purposes wanton disregard of life has been equated to intent to kill.

Appellate defense counsel have suggested that the government's theory would produce some anomalous results. Thus, if a servicemember fired a shot into a large crowd with the intent to kill a single person, but death did not result, he would be guilty of an attempt to murder that person. However, he could not be charged with attempts to murder the other persons in the crowd, since we have held that intent to kill a particular person is quite distinct from wanton disregard for the lives of others. *United States v. Dacanay, supra; United States v. Holsey, supra; United States v. Davis, supra.* On the other hand, an accused who had fired into the same crowd with no intent to kill anyone but with a wanton disregard for human life and had injured no one could, under the government's theory, be convicted of a separate attempt to murder every person in the crowd.

By way of analogy, despite the provisions of Article 118(2), whereunder intent to inflict grievous bodily harm will allow conviction for murder, that intent will not suffice to sustain findings of guilty of attempted murder or assault with intent to murder.[2]

2. The language of the bill of particulars suggests that the trial counsel also assumed that,

by reason of Article 118(2), proof of intent to do great bodily harm would suffice to show the

Similarly, we observe that, since an attempt requires a specific intent, there can be no "attempt" to commit involuntary manslaughter "by culpable negligence." *See* Article 119(b)(1), UCMJ, 10 U.S.C. § 919(b)(1). Furthermore, in several other instances the mens rea sufficient to prove an offense under the Uniform Code will not suffice to prove an attempt to commit that offense. For example, a general intent will suffice to prove rape; but a specific intent to rape is requisite to establish guilt of attempt to rape or assault with intent to rape.[3]

## II

Since an appreciable risk exists that the judge's findings of guilt were tainted by application of an erroneous legal standard, remedial action must be taken. Among the remedies that come to mind are a complete rehearing as to guilt;[4] remand to the original military judge for reconsideration of his findings in a proceeding where the accused is present with counsel;[5] or affirmance of the lesser-included offenses to which appellant pleaded guilty and reassessment of his sentence. This choice of remedies may be made by the Court of Military Review.

## III

The decision of the United States Army Court of Military Review is reversed. The findings of guilty of attempted murder (but not of aggravated assault) are set aside.

The record of trial is returned to the Judge Advocate General of the Army for submission to the Court of Military Review for further proceedings in light of this opinion.

Judge FLETCHER concurs.

COOK, Judge (concurring in the result):

My Brothers say that "[o]ur cases . . . have made it perfectly clear that attempted murder requires a specific intent to kill." 12 M.J. 210, 212. In my opinion, the generalization is misleading. It may properly be applied only to a specification alleging an attempt to effect the type of murder specified in subdivision (2) of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918(2). It has no application, however, to an attempt to commit the type of murder specified in subdivision (3) of the article.

Although the form of each of the specifications in issue brings this case within subdivision (2) and, therefore, justifies the statement and the result reached by my Brothers, I think it important to point out that a differently-worded specification related to subdivision (3) of Article 118 would constitute a valid charge of a type of attempted murder that does not require a specific intent to kill.

Military law defines an attempt as "[a]n act, done with specific intent to commit an offense under" the Uniform Code. Article 80(a), UCMJ, 10 U.S.C. § 880(a). Murder is an offense under the Code; there are four different types.[1] No case cited by my

---

state of mind required to convict of attempt to murder.

3. Thus, intoxication may relieve of culpability for an attempt to commit an offense such as rape or assault with intent to commit rape when it would not be a defense in a prosecution for commission of the principal offense.

4. In the event of a rehearing, no basis would exist to allow withdrawal by appellant of his accepted pleas of guilty to the lesser-included offenses.

5. In such a proceeding appellant can request special findings if he chooses. Of course, if the judge were to change his general findings of guilt, he would then need to conduct a rehearing as to sentence.

1. Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918, reads as follows:

Any person subject to this chapter who, without justification or excuse, unlawfully kills a human being, when he—

(1) has a premeditated design to kill;

(2) intends to kill or inflict great bodily harm;

(3) is engaged in an act which is inherently dangerous to others and evinces a wanton disregard of human life; or

(4) is engaged in the perpetration or attempted perpetration of burglary, sodomy, rape, robbery, or aggravated arson;

is guilty of murder, and shall suffer such punishment as a court-martial may direct,

Brothers holds that, as a matter of law, the "specific intent" required by Article 80(a) must be an intent to commit a particular offense consciously identified by the accused by name—as, for example, burglary, rape, or robbery. I construe the article to require only that a person subject to the Code do an act with the intent to do other acts which, if accomplished, would constitute a defined offense under the Code. In other words, the "specific intent" is not to perpetrate a named delict as such, but an intent to commit acts that would legally constitute an offense. In charging an attempt, the pleader identifies the offense made out by the acts attributed to the accused. As the Manual for Courts-Martial, United States, 1951, paragraph 159, which was operative at the time of the beginning of the Uniform Code, explained:

It is not an attempt when *every act* intended by the accused could be completed without committing an offense, even though the accused may at the time believe he is committing an offense.

(Emphasis supplied.) In my opinion, therefore, a service member can, without entertaining a specific intent to kill, be guilty of attempted murder of the kind specified in subdivision (3) of Article 118 if he does an act, intending to follow it with others, which constitute conduct or create a condition "inherently dangerous to others and evinc[ing] a wanton disregard of human life."

How then did the statement "attempted murder requires a specific intent to kill" evolve? I see it as the result of the confluence of two lines of decision. One line deals with the form of pleading an offense; the other, with the relationship of attempted murder to types of assault in military law. The cases cited in the principal opinion are part of one or the other of these two lines of precedent.

The line of opinion predicated upon the form of pleading postulates that, where an offense can be committed in alternative ways, the factual allegations of the specification of the charge can limit the proof to one of the alternatives. That concept was perhaps most explicitly stated in *United States v. Hemp*, 1 U.S.C.M.A. 280, 3 C.M.R. 14 (1952). There, the specification alleged that the accused "did . . . desert the service of the United States, and did remain absent in desertion until he was apprehended." *Id.* at 281, 3 C.M.R. at 15. Desertion consists of an unauthorized absence, accompanied by one of three different states of mind: (1) an intent to remain away permanently; or (2) an intent to avoid hazardous duty; or (3) an intent to shirk important service.[2] The Court held that, as the form of the allegation was traditionally associated with a charge of desertion with intent to remain away permanently, the trial judge committed prejudicial error by instructing the court members in a way that authorized them to predicate a finding of guilty on a different state of mind. The holding did not, of course, say that there could not be desertion based upon other states of mind, that is, shirk important service or avoid hazardous duty.

Murder, like desertion, can be committed by the same act with different intentions. It can also be committed by different acts unaccompanied by a specific intent to kill. Under subdivision (2) of Article 118, a person subject to the Code commits murder when he unlawfully kills a human being without justification or excuse and "intends to kill or inflict great bodily harm." Under subdivision (3) of the article, the unlawful killing of a human being without justification or excuse is murder when the killer "is engaged in an act which is inherently dangerous to others and evinces a wanton disregard of human life." The difference between these subdivisions is evident, but, it would not be, I believe, tautological to say that an act under subdivision (2) causing

except that if found guilty under clause (1) or (4), he shall suffer death or imprisonment for life as a court-martial may direct.

2. At the time of *United States v. Hemp*, 1 U.S.C.M.A. 280, 3 C.M.R. 14 (1952), desertion was defined in the form carried forward to the present. Article 85, Uniform Code of Military Justice, 10 U.S.C. § 885.

death need not be of a particular kind, but the actor's intent in committing the act must include a specific intent to kill a particular person or group of persons, whereas under subdivision (3), an intentional act causing death must be "inherently dangerous to others and envinc[ing] a wanton disregard of human life" generally, not a purpose to end the life of a single individual or the lives of those of a particularized group. *United States v. McDonald,* 4 U.S.C.M.A. 130, 15 C.M.R. 130 (1954); *United States v. Davis,* 2 U.S.C.M.A. 505, 10 C.M.R. 3 (1953). Consequently, under the *Hemp* concept, a specification that alleges only that the act causing death was directed to a particular individual charges a violation of subdivision (2), and it cannot be proven by evidence sufficient only to sustain a finding of guilty under subdivision (3). In my opinion, *United States v. Carroll,* 10 U.S.C.M.A. 16, 27 C.M.R. 90 (1958), one of the cases cited by the majority, simply applied the *Hemp* concept, although it did not refer to the case by name.

In *Carroll,* the accused was charged with attempting to murder a named person. The Court determined, as in *Hemp,* that the instructions to the members of the court-martial were prejudicially erroneous because they allowed the members to predicate a finding of guilty of attempted murder, not just for an act accompanying a specific intent, as provided in subdivision (2), but for an act done while in the perpetration of a robbery, one of the offenses enumerated in subdivision (4) of Article 118, which does not require a specific intent. In material part, the Court said:

> The court-martial could reasonably believe, on the basis of the instruction, it was sufficient to find merely that the shooting occurred in the course of a robbery. It might therefore conclude it was unnecessary to find that the accused entertained a specific intent to kill; the

latter finding, however, is required by the allegations of the specification.

10 U.S.C.M.A. at 19, 27 C.M.R. at 93.

Of the remaining cases cited by the majority, *United States v. Whitfield,* 7 M.J. 780 (A.C.M.R.1979), *pet. denied,* 8 M.J. 101 (C.M.A.1979); *United States v. Aragon,* 1 M.J. 662 (N.C.M.R.1975); and *United States v. Perry,* 46 C.M.R. 636 (A.C.M.R.1972), *pet. denied,* 22 U.S.C.M.A. 609, 46 C.M.R. 1324 (1972), are like *Carroll,* in that in each, the specification alleged attempted murder of a named person. In *United States v. Creek,* 39 C.M.R. 666, 668 (A.B.R.1968), the specification alleged an "attempt to murder an unknown person," but the person was identified as the one who would cause a hand grenade to "explode when the lid to . . . [a] commode was lifted." The board of review (now Court of Military Review) sustained the specification as sufficient to charge attempted murder under subdivision (2).[3]

*United States v. Thomas,* 13 U.S.C.M.A. 278, 32 C.M.R. 278 (1962), another of the cases referred to by the majority, is different from *Carroll.* It dealt with an attempt to rape and the effect of a circumstance that made it impossible to commit rape. In the course of the opinion the Court discussed the nature of Article 80, which was the first "separate punitive article" in military law to deal with attempts. *United States v. Thomas, supra* at 286, 32 C.M.R. at 286. No part of the opinion declares that a person cannot be guilty of attempted murder on the basis of intentional engagement in conduct inherently dangerous to human beings, when the conduct had proceeded beyond preparation and would apparently have caused death had not something intervened to prevent it. Para. 159, Manual for Courts-Martial, United States, 1969 (Revised edition).

---

**3.** *United States v. Perry,* 46 C.M.R. 636, 639 n. 1 (A.C.M.R.1972), *pet. denied,* 22 U.S.C.M.A. 609, 46 C.M.R. 1324 (1972), declared that while a violation of Article 118(3) requires no intent to kill, committing an act inherently dangerous to others, and evincing a wanton disregard of human life does not constitute attempted murder. *United States v. Creek,* 39 C.M.R. 666 (A.B.R.1968), is cited as "[a] particularly interesting application of this rule." Other than *Creek,* no authority was given for the supposed rule, and as I indicate in the text, I do not agree with it. The cases cited by the majority do not establish the rule.

An aspect of the general discussion in *Thomas* supports my view that the specific intent required for an attempt is not the intent to perform a preselected crime identified by name, but a determination or intention to do acts which, if accomplished, constitute a crime. Thus, in enumerating the elements of attempted rape, the Court stressed the necessity for finding specified acts intended by the accused. Material here is the following:

> That ... each of the appellants did:
> 1. A certain overt act.
> 2. The act was done with the specific intent to commit the offense of rape; *that is, each intended to have sexual intercourse with a female not his wife by force and without her consent.*

*Id.* at 291, 32 C.M.R. at 291 (emphasis supplied).

The remaining case cited by the majority, *United States v. Pitts*, 12 U.S.C.M.A. 634, 31 C.M.R. 220 (1962), concerns the relationship between assault with intent to murder and other assaults under the Uniform Code. There, the accused was charged with assault with intent to commit murder, in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was convicted of assault with intent to commit voluntary manslaughter. On review, an Air Force Board of Review determined that the law officer (now military judge) erred to accused's prejudice in his instructions on the offense found. The Judge Advocate General of the Air Force filed a certificate of review requesting consideration of the correctness of that decision.

Having earlier determined in *United States v. Malone*, 4 U.S.C.M.A. 471, 475, 16 C.M.R. 45, 49 (1954), that the kind of instruction that could be given in respect to a charge of assault with intent to commit voluntary manslaughter presented "an analogous situation" to that which the Court had decided in *United States v. Floyd*, 2 U.S.C.M.A. 183, 7 C.M.R. 59 (1953), in respect to instructions on a charge of

assault with intent to commit murder, the Court in *Pitts* held that the Air Force Board of Review had correctly decided the issue.

*Pitts* did not decide anything regarding attempted murder; the offense charged was assault with intent to murder and the offense found and discussed was assault with intent to commit voluntary manslaughter. *Malone* also did not discuss attempted murder. Neither did *Floyd*. All were concerned with an assault-type offense and its relationship to other assaults under the Code. This relationship led *Pitts* to confirm the statement in *Malone* that "when used as a basis for an assault charge—the term 'murder' must be limited to homicides involving an intent to *kill*," not an intent to inflict great bodily harm. The reason for that limitation, said the Court in *Malone*, is that "[o]therwise, in certain factual situations, assault with intent to murder may be equivalent to the aggravated assaults specified in Article 128 ... [UCMJ, 10 U.S.C. § 928] and other aggravated assaults included within Article 134." *United States v. Malone, supra* at 475, 16 C.M.R. at 49.[4] Earlier, *Floyd* had made the same point. It further observed that there was "fair reason to suppose that the words 'kill' and 'murder' are used synonymously in defining" assault with intent to murder. *United States v. Floyd*, 2 U.S.C.M.A. at 186, 7 C.M.R. at 62.

Assuredly, *Pitts* mirrors the *Floyd-Malone* principle that, as a form of pleading, an allegation of assault with intent to murder requires proof of a specific intent to kill. Although nothing in that trio of cases, or in their lineal descendants, expressly holds that an allegation of attempted murder also requires a specific intent to kill, a charge of that kind is commonly understood to mean an act with a specific intent to kill. In *Floyd*, for example, the Government conceded that, when the subject of an attempt is a particular person, the word " 'murder' is ... understood to mean 'kill.' " 2 U.S.C.M.A. at 187, 7 C.M.R. at 63. It does not

---

4. Both murder, as defined in Article 118(2), UCMJ, 10 U.S.C. § 918(2), and voluntary manslaughter, as defined in Article 119(a), UCMJ, 10 U.S.C. § 919(a), require the unlawful killing of a human being with an intent "to kill or inflict great bodily harm."

follow, however, that a differently worded specification alleging an attempt to commit acts that would constitute the type of murder defined in Article 118(3) also demands a specific intent to kill. I do not believe, therefore, that either the language of the Uniform Code or judicial precedent precludes a charge of attempted murder of the type proscribed by Article 118(3). However, as I indicated at the outset, each specification here alleges an attempt to murder a particular individual, which brings it within subdivision (2) of the Article, and, thus, requires an intent to kill.

I join in reversing the decision of the United States Army Court of Military Review as to the findings of guilty of the offenses charged and the sentence. I would, however, affirm findings of guilty of the lesser offense to which the accused pleaded guilty and return the record of trial to the Judge Advocate General of the Army for submission to the Court of Military Review for reassessment of the sentence.