**UNITED STATES, Appellee,**

v.

**Christopher BARNES, Lance Corporal, U.S. Marine Corps, Appellant.**

No. 42,341.
NMCM 81 0582.

U. S. Court of Military Appeals.

March 14, 1983.

For Appellant: *Lieutenant Commander I.D. Warden, Jr.,* JAGC, USN (argued); *Lieutenant Commander William A. DeCicco,* JAGC, USN.

For Appellee: *Lieutenant Michael P. Cogswell,* JAGC, USNR (argued); *Captain T.C. Watson, Jr.,* JAGC, USN (on brief); *Commander W.J. Hughes,* JAGC, USN.

*Opinion of the Court*

FLETCHER, Judge:

Appellant, contrary to his pleas, was found guilty[1] at a general court-martial of assault with intent to commit voluntary manslaughter, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. We specified the following issue for review:

> WHETHER THE EVIDENCE IS SUFFICIENT TO SUPPORT THE GUILTY FINDING TO ASSAULT WITH THE INTENT TO COMMIT VOLUNTARY MANSLAUGHTER.

After examination of the evidence in this record of trial in light of the legal requirements for this offense, we conclusively affirm the findings of the court below.

■ The offense of which appellant was convicted is expressly detailed as an offense chargeable under Article 134: "Assault with intent to commit voluntary manslaughter ... is an assault committed with a specific intent to kill under such circum-

---

1. Appellant was charged with assault with intent to commit murder and convicted of the lesser-included offense of assault with intent to commit voluntary manslaughter, both laid under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The convening authority approved the sentence, which included a dishonorable discharge, confinement for 5 years, total forfeitures, and reduction to E-1. The Court of Military Review, affirmed the approved findings and sentence 12 M.J. 614 (1981).

stances that, if death resulted therefrom, the offense of voluntary manslaughter would have been committed." Para. 213f (1)(b), Manual for Courts-Martial, United States, 1969 (Revised edition). *See United States v. Malone,* 4 U.S.C.M.A. 471, 16 C.M.R. 45 (1954). Voluntary manslaughter may be effected in the heat of sudden passion caused by adequate provocation. *United States v. Clark,* 22 U.S.C.M.A. 576, 48 C.M.R. 83 (1973); *see United States v. Staten,* 6 M.J. 275 (C.M.A.1979). Only an intent to kill will suffice to convict appellant of the crime charged. *United States v. Henry,* 1 M.J. 155 (C.M.A.1975); *see United States v. Pitts,* 12 U.S.C.M.A. 634, 31 C.M.R. 220 (1962); *United States v. Malone, supra.*

▪ We conclude, as did the court below, that the evidence demonstrates the accused was guilty of the offense of assault with intent to commit manslaughter in the heat of sudden passion caused by adequate provocation. The evidence regarding the assault consists of the sworn testimony both of appellant and one Private Williams, demonstrating mutual combat between appellant and the victim, Naples. In the late afternoon of January 26, 1980, appellant entered the barracks room occupied by Naples and Private Williams. Appellant sat down on a bed beside Naples and began talking to him. The talking turned to arguing and then led to Naples' punching appellant in the stomach and face. Appellant responded in kind and the two of them fought for approximately five minutes. They stopped fighting, and appellant went to view his injuries in a mirror. Appellant said that no one was going to "get away with" hitting him like that and then resumed the fight.

This second fight was of approximately twenty-minutes' duration. Naples participated actively at first, but then began just covering himself up as appellant beat him. When Naples protected his face with his hands, appellant pulled them down and punched Naples in the face. Appellant eventually forced Naples over to a nearby sink, kneed him in the side and back, elbowed him in the back, and succeeded in getting him to fall to the floor.

While Naples was on the floor, appellant kicked him between five and seven times. At one point, appellant lifted Naples' leg and stomped on his groin area. He picked Naples up off the floor a couple of times and punched him in the face while he was up. Before Naples first fell to the floor, Williams told appellant it looked like Naples had been beaten enough. Appellant continued undeterred to brutally hit him and then left the room. When he and Williams returned, they put Naples on a bed and left.

Other evidence was admitted demonstrating the results of the injuries suffered by the victim. Naples was examined by Commander Welch, a Navy surgeon at Camp Lejeune. When Commander Welch saw him, Naples did not know who he was, where he was, or what time it was. He apparently experienced an altered level of consciousness and would only respond to pain. He suffered a head injury, a cerebral contusion, which resulted from bleeding inside the head causing damage to his nervous system. He was also suffering from a fractured skull, jaw, and rib, multiple bruises and scratches, a black eye, and hemorrhaging in the white of the eye. He "showed little signs of improvement" in thirty hours and required transfer to Portsmouth Naval Regional Medical Center. In the week prior to trial, CDR Welch reexamined Naples and found that he was both amnesic of the events causing his injuries and had ataxia (a loss of equilibrium). A physical evaluation board which met on April 10, 1980, declared Naples "unfit for further military service," and resolved to offer him 50 per cent disability.

Both Naples and his mother testified regarding his injuries. Naples' mother, Mrs. L.D. Clark, visited him while he was still in the intensive care unit in the Naval hospital in Portsmouth during late January 1980. She stayed with him for seven weeks. When she first saw him, almost his entire body was bruised and he was semi-conscious. She had to help him with such functions as urinating and washing. He

had massive bruising in his eyes and groin, which took seven weeks to dissipate. He regained the ability to speak coherently on occasion ten days after Mrs. Clark arrived, but remained absent-minded up to and including the time of trial. In the early phases of hospitalization, Naples could not even hold a cup or sit in a wheelchair. As of the date of trial, Naples could not hold his head at a normal angle, could not read a book, and could not work with small arts and crafts as he had done before his injuries. The left side of his body quivered constantly.

Naples confirmed his mother's observations. As of the time he testified at trial, he could neither read nor write adequately. He was absent-minded and had a loss of feeling in his chin and lower lip. His arm quivered when he tried to use it to eat. He had no memory of the events resulting in his injuries.

█ In this fight, the victim's provocation coupled with the heat of appellant's passion resulted in the brutal infliction of traumatic injuries. As detailed above, evidence was introduced at this court-martial which bore on the circumstances surrounding this confrontation. An intent to kill on the part of appellant can be inferred from this circumstantial evidence. Paras. 154a (1) and 197c, Manual, supra. Despite appellant's testimonial disavowal of an intent to kill (see para. 138b, Manual, supra), the remaining evidence of record concerning this fight was sufficient to sustain the trial court's findings of assault with intent to commit voluntary manslaughter. United States v. Wilson, 6 M.J. 214 (C.M.A.1979); see United States v. Wagner, 7 M.J. 420 (C.M.A.1979); cf. United States v. Harville, 14 M.J. 270 (C.M.A.1982).

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COOK concur.