*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
MONAHAN, STEPHENS, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Findley C. K. SCHULTZ**
Private First Class (E-2), U.S. Marine Corps
*Appellant*

**No. 202000040**

Decided: 25 February 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Roger E. Mattioli

Sentence adjudged 29 October 2019 by a general court-martial convened at Marine Corps Base Quantico, Virginia, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for four years, total forfeiture of all pay and allowances, and a dishonorable discharge.

For Appellant:
*Captain Thomas P. Belsky, JAGC, USN*

For Appellee:
*Lieutenant Commander Jeffrey S. Marden, JAGC, USN*
*Major Kerry E. Friedewald, USMC*

Chief Judge MONAHAN delivered the opinion of the Court, in which Senior Judge STEPHENS and Judge DEERWESTER joined.

———————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————————

MONAHAN, Chief Judge:

Appellant was convicted, consistent with his pleas, of aggravated assault with the infliction of substantial bodily harm, in violation of Article 128, Uniform Code of Military Justice [UCMJ].[1] Appellant was also convicted, contrary to his pleas, of attempted unpremeditated murder,[2] in violation of Article 80, UCMJ.

Appellant asserts three assignments of error [AOEs]: (1) the evidence was legally and factually insufficient to sustain a conviction for attempted unpremeditated murder; (2) the convictions for attempted unpremeditated murder and aggravated assault are multiplicious and an unreasonable multiplication of charges; and (3) the segmented sentence imposed by the military judge for Appellant's guilty plea for aggravated assault was inappropriately severe. We find merit in the second AOE, set aside the lesser offense of aggravated assault, and reassess the sentence, which renders the third AOE moot.

## I. BACKGROUND

In winter of 2019, Appellant was finishing his training to operate heavy equipment at Fort Leonard Wood, Missouri. Weighing only 125 pounds and measuring five feet, six inches in height, he was the target of frequent bullying from his classmates. In addition to feeling friendless, Appellant's spirits were low because his girlfriend had recently broken off their relationship and because he worried he failed his recent test to graduate the course.

———————————————

[1] 10 U.S.C. § 928.

[2] Appellant was acquitted of a separate specification of attempted premeditated murder, as well as a specification of communicating a threat.

On the afternoon of the incident at issue, Appellant stood with his class in formation, at ease, while they waited for a bus to take them back to their barracks. Lance Corporal [LCpl] Sierra,[3] a fellow student who was approximately six feet, four inches tall, stood to the left of Appellant. Throughout the day LCpl Sierra had been taunting Appellant by repeatedly calling him "Jew Boy," although Appellant is not in fact Jewish. Appellant insulted LCpl Sierra in response.

While standing in formation, LCpl Sierra once again called Appellant "Jew Boy." Appellant told LCpl Sierra to stop him calling that, but LCpl Sierra refused and repeated the slur. While both men still stood facing forward, Appellant replied "if you don't stop that, I'm going to f[***]g cut your throat."[4] Eyewitnesses heard Appellant angrily threaten to kill LCpl Sierra.[5]

LCpl Sierra laughed and answered that he did not believe Appellant would actually do anything, calling him "Jew Boy"[6] once more. This prompted Appellant to use his right hand to pull out a folding tactical knife from his back pocket. The knife was the sharper of two pocket knives that Appellant carried on his person that day. Rather than being intimidated by the knife, LCpl Sierra challenged Appellant to meet him later in the room where the students practiced martial arts. Realizing his threats had no effect on his tormentor, Appellant raised his right arm, crossing it over his left shoulder, and tried to stab LCpl Sierra in the upper chest and throat area. Upon seeing that LCpl Sierra's fully zipped Gore-Tex jacket blocked the knife from penetrating to the skin, Appellant instead began aiming for LCpl Sierra's stomach area. LCpl Sierra, who initially believed that Appellant was joking, realized he was being threatened and turned to face Appellant, putting his hands on Appellant's shoulders to push Appellant towards the ground.

LCpl Sierra and Appellant's classmates noticed the commotion and rushed in to restrain both individuals. LCpl Papa, who was standing directly behind Appellant, used a "figure-four" chokehold to separate him from LCpl Sierra. As LCpl Papa attempted to restrain him, Appellant continued to

---

[3] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[4] Pros. Ex. 5, at 31.

[5] R. at 94-96, 140, 154.

[6] Pros. Ex. 5, at 36.

stab LCpl Sierra, successfully puncturing LCpl Sierra's lower left backside, until he finally hit the ground and dropped the knife.

An ambulance subsequently brought LCpl Sierra to the Fort Leonard Wood Emergency Room [ER] for treatment. LCpl Sierra had a few small abrasions on his chest, a laceration on his finger, and a three inch wide, one inch deep wound in his back. Although the back wound was not life-threatening, the attending ER nurse testified that had the knife gone any deeper, it could have punctured LCpl Sierra's kidney or renal artery—injuries that could have proven fatal.

During an Army Criminal Investigation Command [CID] interrogation conducted later that day, Appellant acknowledged multiple times that once he pulled out his knife and the fight turned physical, he felt "committed" and that "there was no going back."[7] Although Appellant expressed relief that LCpl Sierra would heal from the wounds and suffer no permanent injury, he admitted that at the time of the incident, his intent was to hurt LCpl Sierra and that he understood he could potentially kill the other Marine.[8]

The Government later charged Appellant with, among other things, two specifications of attempted murder under Article 80, UCMJ. Specification 1 of Charge I alleged "Attempted Murder—Premeditated." Specification 2 of Charge I, on the other hand, alleged "Attempted Murder—Unpremeditated." Specifically, Specification 2 alleged that Appellant "did attempt to *murder* [LCpl Sierra] by means of repeatedly stabbing him with a knife."[9] However, following an Article 32 preliminary hearing, the preliminary hearing officer [PHO] suggested that Specification 2 might also be proven by showing that Appellant attempted *"to inflict grievous bodily harm"* upon LCpl Sierra.[10] Prior to the referral of charges, the Government incorporated a variation of the PHO's suggested theory of culpability into Specification 2 of Charge I by making a "pen-and-ink" modification to the charge sheet by adding *"or inflict great bodily harm upon."*[11]

---

[7] *Id.* at 40-41.

[8] *Id.* at 41, 58-61.

[9] Charge sheet (emphasis added).

[10] Preliminary hearing officer's report at 4 (emphasis added).

[11] Charge sheet (emphasis added).

## II. DISCUSSION

### A. Legal and Factual Sufficiency of Attempted Unpremeditated Murder Conviction

We review each case de novo for legal and factual sufficiency.[12]

When testing for legal sufficiency, we look at "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."[13] Our assessment of legal sufficiency is limited to the evidence produced at trial.[14] In performing this analysis, we must "draw every reasonable infer-

---

[12] UCMJ art. 66; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). We recognize that Public Law 116-283 amended Article 66(d)(1)(B) regarding our factual sufficiency review as follows:

(B) FACTUAL SUFFICIENCY REVIEW.—

(i) In an appeal of a finding of guilty under subsection (b), the Court [of Criminal Appeals] may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof.

(ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

(I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

(II) appropriate deference to findings of fact entered into the record by the military judge.

(iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

However, the amendment to Article 66(d)(1)(B) applies only with respect to a case in which every finding of guilty in the Entry of Judgment is for an offense that occurred on or after 1 January 2021. Pub. L. No. 116-283, § 542(e), 134 Stat. __ (2021).

[13] *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[14] *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

ence from the evidence of record in favor of the prosecution."[15] "The standard for legal sufficiency involves a very low threshold to sustain a conviction."[16]

In evaluating factual sufficiency, we must determine whether, after evaluating all the evidence in the record of trial and making allowances for not having observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.[17] In performing this function, we must take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence or a presumption of guilt," and we must make our own, "independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt."[18]

*1. Appellant's argument that the military judge probably utilized an erroneous standard in convicting him of attempted unpremeditated murder is unpersuasive.*

As an initial matter, Appellant argues that we cannot be confident that his conviction for attempted unpremeditated murder does not rest on an improper legal theory. Specifically, when the Government essentially adopted the recommendation of the PHO to amend Specification 2 of Charge I to include in the disjunctive the theory that Appellant attempted "*to inflict great bodily harm*" upon LCpl Sierra, it injected a legally incorrect standard into the specification because the offense of attempted murder requires the specific intent to kill.[19]

Military judges are presumed to know and follow the law.[20] "However, such a presumption will not be utilized if the record of trial reveals that the judge probably utilized an erroneous standard of law in making his find-

---

[15] *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015) (internal citations omitted).

[16] *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (internal citations omitted).

[17] *Turner*, 25 M.J. at 325.

[18] *Washington*, 57 M.J. at 399.

[19] *United States v. Roa*, 12 M.J. 210, 212 (C.M.A. 1982).

[20] *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007); *United States v. Dellarosa*, 30 M.J. 255, 259 (C.M.A. 1990); *United States v. Lewis*, 12 M.J. 205, 208 n.4 (C.M.A. 1982); *Roa*, 12 M.J. at 211.

ings."[21] Appellant argues that the military judge in his case "probably utilized an erroneous standard in reaching his findings" primarily because he made no mention at any point during the proceedings of the deficiency contained in the specification.[22] Appellant also argues that this conclusion is even more probable because the military judge did not make any special findings concerning his verdict, because Appellant asserts that evidence of specific intent to kill was weak,[23] and because the military judge failed to sua sponte recognize that the attempted murder and aggravated assault convictions were multiplicious.[24]

We are not persuaded by Appellant's arguments on this issue. It certainly would have been a better practice for the military judge to affirmatively address on the record the legal infirmity of the "intent to inflict great bodily harm" theory, added by "pen-and-ink" change into the specification prior to referral. However, there is no evidence in the record to conclude that the military judge utilized this erroneous standard of law when he convicted Appellant of attempted unpremeditated murder. First, the Government never argued or admitted evidence that Appellant was guilty of attempted unpremeditated murder because he acted with an attempt to inflict great bodily harm. Rather, throughout the trial the Government's case sought to prove that Appellant's attack upon LCpl Sierra constituted attempted premediated murder with the specific intent to kill. Second, for his part, Appellant's trial strategy revolved around disproving the intent to kill, as evidenced by his opening statement, motion for a finding of not guilty pursuant to Rule for Courts-Martial [R.C.M.] 917, and closing argument focusing exclusively on that element. Third, the military judge denied Appellant's R.C.M. 917 motion because: (1) the location of where Appellant attempted to stab, including the gut and throat, "indicated an intent to kill"; (2) Appellant admitted to law enforcement that he "should not be trying to kill"; and (3) Appellant told LCpl Sierra "I'm going to kill you."[25]

---

[21] *Roa*, 12 M.J. at 211.

[22] Appellant's Br. at 10-11.

[23] *Id.* at 11.

[24] Appellant's Reply Br. at 4-5.

[25] R. at 232-33.

We are also unpersuaded by Appellant's argument that it is "even more probable"[26] that the military judge utilized an erroneous legal standard in convicting him because the military judge did not make any special findings concerning his verdict. In a judge alone trial, the parties hold the key as to whether the military judge makes special findings.[27] In this case, Appellant's trial defense team elected to not request the military judge to make special findings, and we decline to find that the absence of such special findings makes it more likely that the military judge convicted Appellant using an incorrect legal standard.

Moreover, we find Appellant's argument unpersuasive that the military judge should be stripped of the presumption that he knew and followed the law on this issue because he committed plain error on a different legal issue. Specifically, Appellant highlights that the military judge did not sua sponte dismiss on the grounds of multiplicity his conviction for aggravated assault after the military judge convicted him of attempted unpremeditated murder. Although we agree that it was plain error for the military judge to have not treated these two specifications as multiplicious, (see discussion *infra*) we disagree that this isolated misstep should deprive the military judge of the overall presumption that he knew and followed the law as applied to other legal issues that arose in Appellant's case.

Finally, as discussed *infra*, we find that Appellant's conviction for attempted unpremeditated murder was both legally and factually sufficient. Thus, we reject Appellant's argument that the evidence of his specific intent to kill LCpl Sierra was weak.

For the reasons stated above, we find Appellant's argument, that the military judge probably utilized an erroneous standard in convicting him of attempted unpremeditated murder, to be without merit.

*2. Appellant's conviction for attempted unpremeditated murder is both legally and factually sufficient.*

In addressing the issue of legal sufficiency in this case, Appellant invites us to apply a test applied by the Court of Appeals for the Armed Forces [CAAF] in *United States v. Weatherspoon*. There, CAAF enunciated a test, in the context of its review of the legal sufficiency of a conviction for aggravated

---

[26] Appellant's Br. at 11.

[27] R.C.M. 918(b).

assault, to assess the likelihood that an instrumentality was a "means likely to produce death or grievous bodily harm." However, we agree with the Government that *Weatherspoon* is inapplicable to our analysis on whether there was legally sufficient evidence of Appellant's intent to support his conviction for attempted unpremeditated murder.

Instead, we are guided on this issue by the principle that is used by military judges to instruct court members, "Direct evidence of intent is often unavailable. The accused's intent, however, may be proved by circumstantial evidence. In deciding this issue, you must consider all relevant facts and circumstances . . . ." As our sister service court articulated long ago, direct evidence of intent is often lacking and "must be inferred from all of the circumstantial evidence surrounding the offenses, that is, from the acts done and the things said at the time."[28] In the context of assessing the legal sufficiency of a murder or attempted murder conviction, a military court may find specific intent to kill from the "high risk of homicide" accompanying an appellant's actions and inference that he "intended the natural and probable consequences of [his] acts . . . ."[29]

Here, after angrily threatening LCpl Sierra that he would "cut his f[***]g throat" and that he would kill him, Appellant selected the sharper of the two knives in his possession and tried to stab LCpl Sierra in the upper chest and throat area. Upon seeing that LCpl Sierra's fully zippered Gore-Tex jacket blocked the knife from penetrating to the skin, Appellant instead began aiming for LCpl Sierra's stomach area. Subsequently, when a classmate attempted to restrain him, Appellant continued to stab LCpl Sierra, successfully puncturing LCpl Sierra's lower left backside, until he finally hit the ground and dropped the knife. Although the back wound was not life-threatening, the attending ER nurse testified that had the knife gone any deeper, it could have punctured LCpl Sierra's kidney or renal artery—injuries that could have proven fatal. Later while under interrogation by CID, Appellant provided equivocal responses as to his intent when he repeat-

---

[28] *United States v. Polk*, 48 C.M.R. 993, 996 (A.F.C.M.R. 1974).

[29] *United States v. Willis*, 46 M.J. 258, 261 (C.A.A.F. 1997) (internal citations omitted). This legal principle is also contained in *the Manual for Courts-Martial*, which discusses the intent requirement for unpremeditated murder and states, "It may be inferred that a person intends the natural and probable consequences of an act purposely done." *Manual for Courts-Martial, United States* (2019 ed.), pt. IV, ¶ 56.c(3)(a).

edly stabbed LCpl Sierra.[30] However, Appellant also told the CID special agent that once he brandished his knife, he felt "committed" and that "there was no going back."[31]

Based on Appellant's statements and actions, and considering the evidence in the light most favorable to the Prosecution, we find that a reasonable factfinder could have found all the essential elements of attempted unpremeditated murder beyond a reasonable doubt, to include the element that Appellant had the specific intent to kill.

Moreover, after evaluating all the evidence in the record of trial and making allowances for not having observed the witnesses, we too are convinced of Appellant's guilt beyond a reasonable doubt of this offense. With regard to the intent element, we believe that he formed the specific intent to kill just before he began to stab LCpl Sierra or as he continued to stab LCpl Sierra in various vital parts of his body, to include in the back in the vicinity of LCpl Sierra's kidney.

We find the evidence both legally and factually sufficient to support Appellant's conviction for attempted unpremeditated murder.

### B. Multiplicity of Unpremeditated Murder and Aggravated Assault Convictions

Appellant contends and the Government concedes that Appellant's conviction of Charge III, Specification 2—aggravated assault with the infliction of substantial bodily harm—is multiplicious with the greater offense of which he was convicted under Charge I, Specification 2—attempted unpremeditated murder. We agree.

Because this issue was not raised at trial, we review for plain error.[32] Thus, Appellant must establish that there is error that is "clear and obvious" and that "results in material prejudice to his substantial rights."[33] Here, Appellant's convictions for attempted unpremeditated murder and aggravat-

---

[30] Pros. Ex. 5 at 41, 58-61 (although Appellant expressed relief at that LCpl Sierra would heal from the wounds and suffer no permanent injury, he admitted at the time of the incident, his intent was to hurt LCpl Sierra and that he understood he could potentially kill the other Marine).

[31] *Id.* at 40-41.

[32] *United States v. Oliver*, 76 M.J. 271, 274 (C.A.A.F. 2017).

[33] *Id.* at 275.

ed assault for repeatedly stabbing LCpl Siera in vital parts of his body, including his back, amounted to one offense. Therefore, it was plain error to convict Appellant of both attempted unpremeditated murder and aggravated assault for the same attack without subsequently taking corrective action. Accordingly, we set aside the finding of guilty of the lesser offense in Charge III, Specification 2, and dismiss that specification with prejudice.[34]

**C. Sentence Reassessment**

Having set aside the guilty finding to Charge III, Specification 2, we must determine if we can reassess the sentence "more expeditiously, more intelligently, and more fairly than a new court-martial."[35] In reassessing sentences, we "act with broad discretion."[36]

So long as we are able to determine that the sentence imposed on Appellant, absent the error, would have been at least of a certain magnitude and no higher than he would have received without the error, we may reassess the sentence.[37] Any sentence we seek to affirm must be "appropriate," meaning it is not only "purged of prejudicial error [but] also. . . 'appropriate' for the offense involved."[38]

We look to the non-exclusive list of five factors in *Winckelmann* to determine whether to reassess a sentence or to order a sentencing rehearing: (1) whether there has been a dramatic change in the penalty landscape and exposure; (2) the forum of the court-martial; (3) whether the remaining offenses capture the gravamen of the criminal conduct; (4) whether significant aggravating circumstances remain admissible and relevant; and (5) whether the remaining offenses are the type with which we as appellate

---

[34] Our resolution of this issue renders moot Appellant's secondary argument with regard to this AOE, that his convictions for attempted unpremeditated murder and aggravated assault represent an unreasonable multiplication of charges. Likewise, by setting aside his conviction for aggravated assault, Appellant's third AOE, that the adjudged segmented sentence for his aggravated assault conviction was inappropriately severe, is rendered moot.

[35] *United States v. Wincklemann*, 73 M.J. 11, 15 (C.A.A.F. 2013) (internal quotation marks omitted).

[36] *Id.*

[37] *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000).

[38] *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

judges have experience and familiarity to reasonably determine what sentence would have been imposed at trial.[39]

Under all the circumstances presented, we find that we can reassess the sentence and it is appropriate for us to do so. There is only a marginal change in the penalty landscape and exposure as the remaining offense committed by Appellant, attempted unpremeditated murder, subjected him to a maximum of 20 years confinement. The appellant was sentenced by a military judge. The remaining offense captures the gravamen of the criminal conduct for which the appellant was sentenced, and there is no change in admissible sentencing evidence. Additionally, we have significant experience and familiarity with the offense that remains and conclude that sentence reassessment is appropriate. Absent the error, we are confident that the court-martial would have imposed a sentence no less severe than that contained in the entry of judgment— four years' confinement, reduction to E-1, total forfeiture of all pay and allowances, and a dishonorable discharge. Indeed, because Appellant was sentenced by a military judge sitting alone, who utilized segmented sentencing pursuant to the Military Justice Act of 2016, we are particularly confident that the confinement portion of the adjudged sentence for attempted unpremeditated murder would have remained at four years.[40]

Finally, we conclude the reassessed sentence purges the error from the original sentence and is an appropriate punishment for the modified findings and this offender.[41]

### III. CONCLUSION

The finding of guilty to Charge III, Specification 2 is **SET ASIDE** and that specification is **DISMISSED WITH PREJUDICE**. After careful consideration of the record and briefs of the appellate counsel, we have determined that, following our corrective action, the remaining findings and the sentence are correct in law and fact and that no error materially prejudicial to Appel-

---

[39] *Winckelmann*, 73 M.J. at 15-16.

[40] *See United States v. Page*, __ M.J. __, No. 202000069, 2021 CCA LEXIS 60, at *14 (N-M. Ct. Crim. App. Feb. 11, 2021).

[41] *Sales*, 22 M.J. at 308.

lant's substantial rights remains.[42] Accordingly, the remaining findings and sentence, as reassessed by this Court, are **AFFIRMED**.

Senior Judge STEPHENS and Judge DEERWESTER concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[42] UCMJ arts. 59, 66.